UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NICOLE DAY,

                Plaintiff,                            Hon. Ellen S. Carmody

v.                                             Case No. 1:14-CV-1330

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/


**<u>OPINION</u>**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On April 16, 2015, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #11).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 34 years of age on her alleged disability onset date. (PageID.177). She successfully completed high school and worked previously as a title clerk and cashier. (PageID.53, 67). Plaintiff applied for benefits on January 17, 2012, alleging that she had been disabled since October 1, 2010, due to fibromyalgia, depression, chronic fatigue, and irritable bowel syndrome. (PageID.177-87, 197). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.94-175). On April 18, 2013, Plaintiff appeared before ALJ Lawrence Blatnik with testimony being offered by Plaintiff and a vocational expert. (PageID.60-92). In a written decision dated June 12, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.44-55). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.33-38). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2011. (PageID.46). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) fibromyalgia; (2) obesity; (3) irritable bowel syndrome; and (4) sleep apnea, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.46-49). With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform sedentary work subject to the following limitations: (1) she can frequently climb ramps, stairs, ladders, and scaffolds; (2) she can frequently balance, kneel, and crouch; and (3) she can occasionally stoop and crawl. (PageID.49).

A vocational expert testified that if Plaintiff were limited to the extent reflected in the ALJ's RFC determination, she would still be able to perform her past relevant work as a title clerk. (PageID.84-88). The vocational expert further testified that there existed approximately 9,960 other jobs in the lower peninsula of Michigan which Plaintiff could perform consistent with her RFC. (PageID.87-88). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.


I.          **The ALJ Properly Assessed Dr. Muzquiz's Opinion**

Plaintiff's treating physician, Dr. Moses Muzquiz, opined that Plaintiff was impaired to an extent far greater than recognized by the ALJ. The ALJ, however, afforded "little weight" to Dr. Muzquiz's opinions. Plaintiff argues that she is entitled to relief because the ALJ failed to articulate good reasons for discounting the opinions expressed by Dr. Muzquiz.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician

6

rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376-77.

On March 27, 2013, Dr. Muzquiz completed a report concerning Plaintiff's ability to "engage in work related activities."  (PageID.439-42).  The doctor reported that during an 8-hour workday, with normal breaks, Plaintiff can sit and stand/walk for "less than 2 hours" each. (PageID.440).  The doctor reported that Plaintiff can walk "less than" one block "without rest or severe pain."  (PageID.440).  Dr. Muzquiz reported that Plaintiff experiences "marked limitation" in her ability to "deal with work stress."  (PageID.440).  The doctor reported that Plaintiff will need to take unscheduled breaks, of 30-60 minutes duration, "multiple" times throughout the day. (PageID.441).  The doctor reported that Plaintiff's ability to use her upper extremities to perform work activities is significantly limited.  (PageID.441).

As the ALJ recognized, the extreme limitations articulated by Dr. Muzquiz are simply not supported by the record.  While Plaintiff experiences sleep apnea, treatment notes indicate that she "did really well" with use of a CPAP device.  (PageID.265, 386-87).  Plaintiff later discontinued using her CPAP device.  (PageID.352).  As for Plaintiff's fibromyalgia, a rheumatology examination revealed "normal" grip strength and muscle power with no evidence of synovitis or abnormal joint effusion or tenderness.  (PageID.305-06).  While Plaintiff complains that she suffers debilitating restless leg syndrome, a March 7, 2013 neurology examination revealed that Plaintiff was experiencing "mild" restless leg syndrome with "no findings of myopathy."  (PageID.437).  This

examination further revealed "Reflexes normal, no muscle weakness. . .No motor or sensory deficits. Fine motor skills normal.  Balance and gait intact.  Coordination is intact.  DTR's are preserved. Babinski[2] is normal."  (PageID.437).  As for the doctor's assertion that Plaintiff suffers from depression which exacerbate her symptoms, examination by mental health professionals revealed that Plaintiff was experiencing dysthymia which was "well managed with medication." (PageID.342).  Plaintiff's GAF score was rated as 62.[3]  (PageID.342).  Finally, Dr. Muzquiz's contemporaneous treatment notes are not consistent with his subsequent opinions.  (PageID.308-18, 347-59).  In sum, the ALJ's decision to afford "little weight" to Dr. Muzquiz's opinions is supported by substantial evidence.

## II.        Plaintiff's Credibility

At the administrative hearing, Plaintiff testified that she was unable to work due to constant pain from her various impairments.  (PageID.78-81).  Plaintiff reported that her pain is so bad that "at least" three days each week she is unable to even get out of bed.  (PageID.81).  The ALJ afforded limited weight to Plaintiff's subjective allegations.  Plaintiff argues that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th

---

[2]  Babinski test is a neurological test designed to discern damage to the central nervous system.  *See* Babinski, available at http://www.medterms.com/script/main/art.asp?articlekey=7171 (last visited on March 7, 2016).

[3]  The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994).  A score of 62 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships."  *Id.* at 32

Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same).   As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.   If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard.  *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

As discussed in the preceding section, the scant medical evidence simply fails to support Plaintiff's allegations that she suffers such extreme pain and limitation. In sum, the ALJ's determination to discount Plaintiff's credibility is supported by substantial evidence. Accordingly, this argument is rejected.

## III. The ALJ Properly Assessed Plaintiff's Fibromyalgia

Plaintiff argues that the ALJ failed to comply with Social Security Ruling 12-2 when evaluating her fibromyalgia and the extent to which such impairs her ability to function. The Court is not persuaded.

Social Security Ruling 12-2, Evaluation of Fibromyalgia, "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment of

fibromyalgia, and how we evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act."  Social Security Ruling, SSR 12-2p; Titles II and XVI: Evaluation of Fibromyalgia, 77 Fed. Reg. 43640 (S.S.A. July 25, 2012).  Much of this Social Security Ruling concerns how to assess whether a claimant's fibromyalgia even constitutes a severe impairment.  *Id.* at 43640-43643.

Here, the ALJ concluded that Plaintiff's fibromyalgia constitutes a severe impairment. However, the determination that a claimant's fibromyalgia constitutes a severe impairment does not trigger any special fibromyalgia-specific analysis.  Instead, Social Security Ruling 12-2 expressly states that once a claimant's fibromyalgia is found to constitute a severe impairment, the ALJ "will consider it in the sequential evaluation process to determine whether the person is disabled."  *Id.* at 43643.  Specifically, the ALJ will "consider the severity of the impairment, whether the impairment medically equals the requirements of a listed impairment, and whether the impairment prevents the person from doing his or her past relevant work or other work that exists in significant numbers in the national economy."  *Id.*

This is precisely what the ALJ did in this case.  He found that Plaintiff's fibromyalgia constituted a severe impairment and then continued with the required sequential analysis.  At Step III of this process, the ALJ, noting that there "is no specific medical listing pertaining to fibromyalgia," assessed whether Plaintiff's fibromyalgia met or medically equaled a listed impairment.  (PageID.48-49).  The ALJ answered this question in the negative.  Given the medical evidence discussed above, this determination is supported by substantial evidence.  At step IV of the sequential process, the ALJ found that Plaintiff, despite her impairments and limitations, could perform her past relevant work as a title clerk.  This determination is likewise supported by

substantial evidence.  Accordingly, the Court discerns no error in the ALJ's evaluation of Plaintiff's fibromyalgia.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  The Court further determines that appeal of this matter would not be taken in good faith.  *See Smith v. Commissioner of Social Security*, 1999 WL 1336109 at *2 (6th Cir., Dec. 20, 1999); *Leal v. Commissioner of Social Security*, 2015 WL 731311 at *2 (N.D. Ohio, Feb. 19, 2015); 28 U.S.C. § 1915(a)(3).  A judgment consistent with this opinion will enter.

Date:  March 15, 2016                                      /s/ Ellen S. Carmody
                                                           ELLEN S. CARMODY
                                                           United States Magistrate Judge

12